Morrison, Respondent, vs. Board of Education of the City of West Allis and others, Appellants.

*March 11—April 15, 1941.*

*John C. Doerfer,* city attorney of West Allis, for the appellants.

*A. W. Richter* of Milwaukee, for the respondent.

WICKHEM, J. This appeal involves the proper construction and the constitutionality of ch. 121, Laws of 1939, which is now sec. 39.40 (5), Stats. Ch. 121 amends ch. 39, Stats. 1939, commonly known as the "Teachers' Tenure Act," by

permitting local school boards to retire teachers who have reached their sixty-fifth birthday.

Sec. 39.40 (2), Stats., so far as material here, provides:

"All employment of teachers . . . shall be on probation, and after continuous and successful probation for five years in the same school system or school, either before or after the taking effect of this section, such employment shall be permanent during efficiency and good behavior and until discharge for cause. . . ."

Ch. 121, Laws of 1939, effective on May 29th of that year, amended sec. 39.40, Stats., by the addition of a fifth subsection, as follows:

"After July 1, 1940, the provisions of this section shall not apply to a teacher after the close of the school year during which such teacher shall have attained the age of sixty-five years or to any teacher who shall have attained the age of sixty-five years prior to July 1, 1940, except that the provisions of this subsection shall not apply to principals, superintendents or supervising teachers."

The facts are not in dispute. Plaintiff was engaged as a high-school teacher in the city of West Allis in September, 1929, and taught without interruption to the end of the June, 1940, term. On November 4, 1939, plaintiff became sixty-five years of age. On November 6, 1939, she signed a contract to teach up to June, 1940. On that date she was given notice by the board that she would not be given a contract or assigned to any duties for the term commencing in September, 1940. On the following day a hearing was held in response to plaintiff's request to continue as a teacher until June, 1941. This was denied, and on August 5, 1940, plaintiff's position was filled by the board.

The trial court held that the rights created in plaintiff by the Teachers' Tenure Act of 1937 were contractual in nature; that ch. 121, Laws of 1939, was retrospective in operation,

impaired the obligation of this contract, and was invalid under sec. 10, art. I, constitution of the United States, and sec. 12, art. I, Wisconsin constitution.

Plaintiff claims that under the doctrine announced in the case of *State ex rel. Schmidt v. District No. 2,* 237 Wis. 186, 295 N. W. 36, this court should construe ch. 121, Laws of 1939, as prospective in operation; in which case all question as to its constitutionality and application to plaintiff would disappear since plaintiff was not sixty-five when the law went into effect. The *Schmidt Case, supra,* dealt with ch. 151, Laws of 1939, which amended the Teachers' Tenure Act and exempted from its operation common school districts operating one-room schools. It was there stated that unless such an amendment clearly indicates that it was intended to have retrospective operation, it will be considered as addressed to the future and not to the past. The court was unable to discover in ch. 151, Laws of 1939, any evidence of an intention to have the law operate retrospectively. The rule of that case will not support plaintiff's contentions here. Ch. 121, Laws of 1939, contains ample internal evidence that it was to operate retrospectively. It specifically deals with two classes of teachers, (1) those who at any time after its enactment shall attain the age of sixty-five years, and (2) those who attain the age of sixty-five years prior to July 1, 1940. It is suggested by plaintiff that the provision in relation to those attaining the age of sixty-five years prior to July 1, 1940, which, of course, literally applies to plaintiff and to all teachers who prior to the enactment of ch. 121, Laws of 1939, had already reached the age of sixty-five years, must be taken to refer to teachers who obtained employment after July 1, 1940, or who had not at that time completed a probationary period of employment. The enactment will not reasonably bear so restricted a meaning. It is not to be supposed that a situation so extraordinary and unusual aroused the legislative concern. The only sensible meaning is that teachers on

permanent tenure may be retired when they become sixty-five, and we are faced squarely with the question whether it was competent for the legislature to amend the tenure act by an age limitation applicable to teachers who had a permanent status at the time when it became effective.

The supreme court of the United States in *Dodge v. Board of Education,* 302 U. S. 74, 78, 58 Sup. Ct. 98, 82 L. Ed. 57, speaking through Mr. Justice ROBERTS, said with reference to the power of the legislature to amend a teachers' tenure and retirement law:

"The parties agree that a state may enter into contracts with citizens, the obligation of which the legislature cannot impair by subsequent enactment. They agree that legislation which merely declares a state policy, and directs a subordinate body to carry it into effect, is subject to revision or repeal in the discretion of the legislature. . . .

"In determining whether a law tenders a contract to a citizen it is of first importance to examine the language of the statute. If it provides for the execution of a written contract on behalf of the state the case for an obligation binding upon the state is clear. Equally clear is the case where a statute confirms a settlement of disputed rights and defines its terms. On the other hand, an act merely fixing salaries of officers creates no contract in their favor and the compensation named may be altered at the will of the legislature. This is true also of an act fixing the term or tenure of a public officer or an employee of a state agency. The presumption is that such a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise."

See also *Phelps v. Board of Education,* 300 U. S. 319, 57 Sup. Ct. 483, 81 L. Ed. 674.

The foregoing furnishes the test. It only remains for us to apply the test to sec. 39.40, Stats. Examining the statute we find no reference whatever to a contract. The term is not even mentioned. It is simply provided that all employment of teachers shall be permanent upon satisfaction of the statu-

tory conditions. So far as we can see, there is no requirement of any further written contract. There is no provision that the existing contracts of teachers shall be indefinite in operation. All that is done is to prescribe that those teachers who have been in employment for a five-year period of successful probation shall not thereafter be dismissed except for cause. We discover no intent to create a statutory contract, and nothing to overcome the very strong presumption that this act simply declared a public policy in the important field of education—a policy to be pursued "until the legislature shall ordain otherwise." In strong contrast to sec. 39.40 are the terms of a state tenure act held by the United States supreme court to be contractual and not subject to an amendment retrospective in operation. The case of *Indiana ex rel. Anderson v. Brand,* 303 U. S. 95, 58 Sup. Ct. 443, 82 L. Ed. 685, involved the Teachers' Tenure Act of Indiana. That act was phrased in terms of contract. It is provided that any person who had served or shall serve under contract as a teacher in the state of Indiana for five or more successive years, and who shall hereafter enter into a teacher's contract for further service, shall thereupon become a permanent teacher. It was provided that (p. 101) :

"Upon the expiration of any contract between such school corporation and a permanent teacher, such contract shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract. Such an indefinite contract shall remain in force unless succeeded by a new contract signed by both parties."

The act consistently treats the teacher as a contractor with the state or its subdivisions. While recognizing as in the *Dodge Case, supra,* that the principal function of the legislature is not to make contracts but to declare the public policy by enactments that are subject to amendment or repeal, the court held that a legislative enactment may contain provisions which, when accepted as the basis of action by individuals,

become contracts between the state or its subdivisions, and that the Indiana act was such a statute. The court said (p. 105):

"The title of the act is couched in terms of contract. It speaks of the making and canceling of indefinite contracts. In the body the word 'contract' appears ten times in section 1, defining the relationship; eleven times in section 2, relating to the termination of the employment by the employer, and four times in section 4, stating the conditions of termination by the teacher."

The Indiana statute is so, obviously different from sec. 39.40, Stats., that the point need not be labored. The case is chiefly valuable as illustrating what constitutes sufficient internal evidence in such a statute that a contract is contemplated and when acted on is actually created. Certainly sec. 39.40 falls far short of the test. It is quite similar to the statutes involved in the *Phelps* and *Dodge Cases, supra,* which were held not to create contracts.

Plaintiff relies upon the cases of *State ex rel. Dudgeon v. Levitan,* 181 Wis. 326, 193 N. W. 499; *State ex rel. O'Neil v. Blied,* 188 Wis. 442, 206 N. W. 213; and *State ex rel. Nyberg v. School Directors,* 190 Wis. 570, 209 N. W. 683, as holding that such statutes are contractual. The *Dudgeon* and *O'Neil Cases, supra,* involve the Teachers' Retirement Act, a wholly different law and one quite distinguishable from the Teachers' Tenure Act. The Teachers' Retirement Act sets up a complicated system of payments by the teacher and by the state available in the form of annuities to the teacher on retirement. Sec. 42.42, Stats., requires that each contract made after the law takes effect shall be subject to its terms, and that in contracts made prior to that time no deduction under the law shall be made without the consent of the teacher. The Teachers' Retirement Act sufficiently evidences a purpose to create contractual rights in teachers, and cases so sustaining it are not in point here. It is true that in the *O'Neil Case,*

*supra,* some weight is given to the fact that a teacher has always stood in a contract relation to the state or its subdivisions as distinguished from the tenure of a public officer. The fact, however, that employment as a teacher is initiated by contract does not mean that a statute making the employment permanent creates or continues a contractual relationship. It simply creates permanent employment as a teacher.

The *Nyberg Case, supra,* had to do with ch. 510, Laws of 1909, creating a teachers' annuity and retirement fund for cities of the first class. This act provided that appointments of teachers shall be on probation, and after successful probation for four years the appointment shall be permanent. The question in the *Nyberg Case, supra,* was whether affirmative action was required by the school board at or prior to the expiration of the probation period declaring that the probation had been successfully served, or whether mere inaction by the board upon the termination of the period gave tenure to the teacher. The latter was held to be the rule of the statute. The opinion contains the following statement (p. 575) :

"That the status of one permanently employed as a teacher under such a system and with the rights so fixed cannot be impaired by subsequent legislation, as held in *State ex rel. O'Neil v. Blied,* 188 Wis. 442, 206 N. W. 213, manifestly requires a holding .that such status or contract right cannot be destroyed or impaired by the school board, which is but the administrative arm of the state for carrying on the governmental function of education, *except and unless such administrative body has the express power given it by statute to effect such change.*"

The underlined portion of this quotation means express power given by the original statute establishing the permanency of the status. In so far as the opinion intimates that the legislature could not have changed the permanent employment features of this retirement act, it goes further than is necessary for its holding. Obviously, if the statute con-

fers permanent tenure a school board cannot destroy the tenure whether a subsequent amending statute can do so or not. That is all that was involved in the case, and hence we are not disposed to consider whether the *dictum* is correct as applied to the statute there involved. That statute is different from the Teachers' Tenure Act in much the same respects that the Teachers' Retirement Act differs from the tenure act.

In the case of *State ex rel. Schmidtkunz v. Webb,* 230 Wis. 390, 284 N. W. 6, which involves the very act now under consideration, it is strongly intimated by this court that the act is subject to amendment. The question there related to the power of a school board under the provisions of ch. 374, Laws of 1937, to treat the marriage of a woman teacher as cause for dismissal. The court held that the authorization in the statute was not broad enough to confer such power upon the school board. The court said (p. 402) :

"If the legislature, in its wisdom, desires to authorize school boards to determine whether the best interests of the schools committed to their administration require the adoption of a policy against re-employing teachers who have married, it can so declare by appropriately amending the present law."

It is contended by plaintiff that the Teachers' Retirement Act and Teachers' Tenure Act, although entirely separate enactments, should be considered together, and that so considered the contractual basis of the later act becomes evident. It is true that tenure and retirement laws have not infrequently been enacted as a single statute. We see no reason, however, why a separate and subsequent tenure act that presents no internal evidences of being contractual in character should be held to acquire such a character by reason of such contractual elements as may be found in a previously enacted retirement act.

It is next contended that ch. 121, Laws of 1939, is unconstitutional because of an arbitrary discrimination between

active school teachers on the one hand and principals, superintendents, and supervising teachers on the other. The point is not well taken. It may have been considered by the legislature that a person of sixty-five will in many instances have lost the ability to conduct effective class-room instruction and still be capable of supervising other teachers or administering the school system. The matter seems clearly to be within the realm of reasonable debate, and since the arbitrary character of the classification must clearly appear, plaintiff's contention cannot be sustained.

*By the Court.*—Judgment reversed, and cause remanded with directions to quash the writ.