Janice M. Dunn, Randy J. Tylke, Diane P. Moore, and Frank J. Liska, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,†

v.

Milwaukee County, a municipal corporation, Defendant-Respondent.

Court of Appeals

*No. 03–3525. Submitted on briefs June 4, 2004.—Decided January 27, 2005.*

2005 WI App 27

(Also reported in 693 N.W.2d 82.)

† Petition to review denied 5-11-2005.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert L. Elliott*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Alan M. Levy* of *Lindner & Marsack, S.C.*, Milwaukee.

Before Deininger, P.J., Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN, J.   In the year 2000, the Milwaukee county board adopted an ordinance providing for wage increases and benefits for certain non-represented county employees. The ordinance provided for wage increases in the years 2001 through 2004. In 2002, the county board eliminated the 2003 wage increase for the plaintiffs in this class-action suit. The plaintiffs challenge the denial of the 2003 increase. They claim both breach of contract and promissory estoppel. The circuit court concluded that the plaintiffs could not prevail on either claim and granted summary judgment in favor of Milwaukee County. We affirm the circuit court.

## Background

¶ 2.   The plaintiff class consists of the named and unnamed non-represented employees of Milwaukee County who, in 2003, were either (1) in the County

Executive Compensation Plan or (2) scheduled to receive $50,000 or more in salary and bonuses in 2003. The county board passed an ordinance on November 2, 2000, containing wage and benefit changes affecting these plaintiffs. The 2000 ordinance contains the following wage increase language:

> 7. In 2001, effective pay period thirteen (13), a 2% increase of all wage rates for authorized positions which are not represented by a collective bargaining unit.
>
> . . . .
>
> 9. Effective the first pay period of 2002 all wage rates for authorized positions which are not represented by a collective bargaining unit shall be increased by 3%.
>
> . . . .
>
> 12. Effective the first pay period of 2003 all wage rates for authorized positions which are not represented by a collective bargaining unit shall be increased by 3%.
>
> . . . .
>
> 14. In 2004 all wage rates for authorized positions which are not represented by a collective bargaining unit shall be increased by 2% effective pay period one (1) and 2% effective pay period thirteen (13).

For the same four-year time period, the ordinance increased the amounts employees contributed toward health insurance premiums. The monthly contributions were increased from $38 to $80 for single coverage and from $51 to $100 for family coverage.

¶ 3. The plaintiffs received their wage increases in 2001 and 2002. However, in October 2002, the

plaintiffs were informed that the County's proposed 2003 budget ordinance would eliminate their wage increase for 2003. In November 2002, the county board repealed the provisions in the 2000 ordinance that would have provided the 2003 wage increase to the plaintiffs.

¶ 4.    In response, the plaintiffs filed this suit as a class action against the County, claiming breach of contract and promissory estoppel.[1] Both parties moved for summary judgment. The circuit court granted the County's motion and dismissed the plaintiffs' claims.

## Discussion

■

¶ 5.    We perform summary judgment analysis *de novo,* applying the same method employed by circuit courts. *See Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). That method is well established and need not be repeated in its entirety. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. It is sufficient to say here that summary judgment is appropriate when there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. *See id.*, ¶ 24.

¶ 6.    We conclude, as did the circuit court, that there is no genuine issue as to any material fact and that the County is entitled to judgment as a matter of law.

---

[1] The circuit court issued an order certifying this case as a class action on March 6, 2003, pursuant to Wis. Stat. § 803.08 (2001–02). All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

*Breach of Contract*

¶ 7.   The plaintiffs argue that a binding contract was formed between the plaintiffs and the County in November 2000 when the county board, passed an ordinance providing for specified wage increases for the years 2001 through 2004. The plaintiffs assert that the County breached that contract when it failed to provide the 2003 wage increase. Accordingly, we address whether the November 2000 ordinance created for the plaintiffs a contractual right to the 2003 wage increase.

██

¶ 8.   The plaintiffs correctly assert that a legislative body may, through its legislative acts, create a contract with employees. *See Morrison v. Board of Educ.*, 237 Wis. 483, 487, 297 N.W. 383 (1941); *State ex rel. O'Neil v. Blied*, 188 Wis. 442, 447, 206 N.W. 213 (1925). However, as the supreme court in *Morrison* explained, courts employ a presumption that legislative enactments do not create contractual rights. *Morrison*, 237 Wis. at 487–88. The court characterized this presumption as "very strong," *id.* at 488, and described the test as follows, quoting and adopting language from *Dodge v. Board of Education*, 302 U.S. 74 (1937):

> "In determining whether a law tenders a contract to a citizen it is of first importance to examine the language of the statute. If it provides for the execution of a written contract on behalf of the state the case for an obligation binding upon the state is clear. Equally clear is the case where a statute confirms a settlement of disputed rights and defines its terms. On the other hand, an act merely fixing salaries of officers creates no contract in their favor and the compensation named may be altered at the will of the legislature. This is true also of an act fixing the term or tenure of a public officer or an employee of a state agency. The presump-

tion is that such a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise."

*Morrison*, 237 Wis. at 487 (quoting *Dodge*, 302 U.S. at 78–79). More recently, in *Wisconsin Professional Police Ass'n v. Lightbourn*, 2001 WI 59, ¶ 145 n.188, 243 Wis. 2d 512, 627 N.W.2d 807, our supreme court quoted, with apparent approval, the following language from *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 n.14 (1977):

In general, a statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State.

¶ 9. The principle that legislative acts are presumed *not* to create contractual rights, but only to declare policy subject to revision by subsequent legislation, makes sense because the primary function of a legislative body is to make laws that effectuate policies, not to make contracts that bind future legislative bodies. *See National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 466 (1985). Routinely treating legislative acts as contracts "would enormously curtail the operation of democratic government." *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995).

██

¶ 10. Here, nothing in the County's 2000 ordinance wage-increase language suggests that the county board intended to contractually bind itself to wage increases in future years. So far as we can discern, the plaintiffs do not argue otherwise. Instead, the plaintiffs point to the ordinance's prefatory language, which

states that it is "crucial that the County provide wage rates and benefit levels which are comparable to those of other employers in order to recruit and retain qualified staff to meet the needs of the public." This prefatory language does not, however, reveal an intent to be *contractually* bound to the wage increases. Rather, it shows that the county board had the same goal government bodies often have when they unilaterally adopt wage and benefit packages for non-represented employees:   to attract and retain a quality workforce.

¶ 11.   The plaintiffs also point to various County memoranda and similar documentation extolling the benefits the County would derive from the county board's adoption of the proposed wage and benefit package for non-represented employees. The listed benefits to the County include controlling costs, attracting and retaining quality employees, and inducing represented employees to accept a similar wage and benefit package. However, these documents add nothing. The plaintiffs do not explain why these potential benefits to the County, alone or in combination with any other evidence in the record, are sufficient to show the county board's intent to create a contractual obligation to increase wages in future years.

¶ 12.   Moreover, the plaintiffs' contention that they provided consideration to the County in the form of "labor peace with its represented employees" is based on the faulty premise that the plaintiffs played an active role in prompting represented employees to accept the same package. But the undisputed evidence supports only one inference—that the county board unilaterally imposed the wage and benefit package for non-represented employees. The county board may have done so with an eye toward inducing represented employees to accept the same package, but plaintiffs

point to no evidence suggesting that the board did not, in this respect, act unilaterally. Accordingly, any labor peace resulting from the 2000 ordinance is not properly characterized as consideration provided by the plaintiffs.

¶ 13. We conclude that, at the time the 2000 ordinance was passed, the ordinance contained, at most, a unilateral promise to increase wages in 2003; it did not, at that time, create a contractual right to the 2003 wage increase.

¶ 14. We turn our attention to the plaintiffs' reliance on a line of decisions indicating that an employer's unilateral promise may become an enforceable contract term when an employee subsequently provides consideration. Under these cases, the employer's promise constitutes an offer and the employee's subsequent service constitutes both acceptance of the offer and consideration. Although this general description of the case law might seem to benefit the plaintiffs, a closer look shows that none of the cases support the plaintiffs' assertion that they gave consideration by remaining on the job *after* they were given notice in 2002 that the 2003 wage increases would not occur.

¶ 15. Most of the cases cited by the plaintiffs involve a promised benefit that was revoked *after* employees had completely or substantially performed services they were required to perform in exchange for the benefit. For example, in *Roth v. City of Glendale*, 2000 WI 100, 237 Wis. 2d 173, 614 N.W.2d 467, the supreme court addressed whether an employer could reduce retirement benefits for retirees who had fulfilled the requirements in place for such benefits at the time the employees retired. *Id.*, ¶¶ 1–2, 8–9. In that case, the retirees had provided consideration prior to the time the employer sought to reduce the promised benefits:

If employees trade off present wages for benefits upon retirement, they expect assurance that these benefits will continue into the future. They do not expect their earned benefits to be whittled away, subject to the contingencies of future negotiations . . . .

. . . The right to receive health and welfare benefits arises from the retiree's status as a past employee and is not dependent on a continued or current relationship with the employer.

*Id.*, ¶¶ 28–29 (citations omitted).

¶ 16. Similarly, in *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 271 N.W.2d 879 (1978), the supreme court ruled against an employer who attempted to reduce retirement benefits to current retirees:

"Clearly, under our present economic system, an employer cannot offer a retirement system as an inducement to employment and, after an employee has accepted employment under such circumstances, withdraw or terminate the program *after an employee has complied with all the conditions entitling him to retirement rights thereunder.*"

*Id.* at 247 (emphasis added) (quoting and adopting language from *Cantor v. Berkshire Life Ins. Co.*, 171 N.E.2d 518, 522 (Ohio 1960)); *see also Demerath v. Nestle Co.*, 121 Wis. 2d 194, 196–98, 358 N.W.2d 541 (Ct. App. 1984) (employees, who were terminated at a time when the employer had in place a termination benefit policy, were entitled to the termination benefit because the employees had complied with all requirements for the benefit at the time of their termination).

¶ 17. The retirement cases discussed above do not control here because they involve employees whose compliance with requirements for promised benefits

was complete at a time when the employer's promise was still in place. The case before us is different. The plaintiffs here were informed *prior to* 2003 that they would not receive a wage increase in return for their service in 2003. Thus, the question here is whether an employer's promise of a future wage increase, revoked with notice to the employees before the increase was to take effect, is enforceable by employees who remain in service beyond the time the increase was to take effect. The plaintiffs provide no authority supporting their argument that this situation creates a contractual obligation.[2]

¶ 18.   The plaintiffs point to the following treatise language quoted in *Ferraro v. Koelsch*, 124 Wis. 2d 154, 368 N.W.2d 666 (1985):

"Because an at-will employee is free to quit his job at any time, the preexisting duty rule will generally not create a problem if his employer promises him some added benefit. For instance, if an employer promises an at-will employee a salary increase or a bonus, the employee gives adequate consideration for the employer's promise by staying on the job. He has in effect given up his right to quit, at least temporarily. This detriment is sufficient consideration for the employer's promise of a raise or a bonus."

---

[2] It follows that we are not persuaded by the plaintiffs' argument that their increased health insurance premium contributions as set forth in the 2000 ordinance constitute consideration that they gave in exchange for promised wage increases for 2001 through 2004. To the extent the plaintiffs paid increased contributions in 2003, they did so knowing that they would not receive 2003 wage increases. To the extent the plaintiffs paid increased contributions in 2001 and 2002, they received the benefit of their alleged bargain in those years because they received the promised wage increases for those years.

380

*Id.* at 169 n.5 (quoting CHARLES G. BAKALY, JR., AND JOEL M. GROSSMAN, MODERN LAW OF EMPLOYMENT CONTRACTS § 3.2.1, at 28 (1984 Supp.)). This language does not shore up the plaintiffs' argument because it refers to an employee who has, "at least temporarily," given up the right to quit. In contrast, the plaintiffs in this case had the right to quit at any time. Moreover, the treatise relies on two cases for this statement, and neither supports the interpretation urged by the plaintiffs. In the first case, *Brydges v. Coast Wide Land, Inc.*, 467 P.2d 209, 210–12 (Wash. Ct. App. 1970), the court concluded that an at-will salesperson was entitled to a commission-based bonus for sales he had *already* made even though he was terminated before the end of the bonus year. The court determined that his continued employment and sales up to his termination date were adequate consideration for a bonus based on sales made. *Id.* at 212. The second case, *Rochester Corp. v. Rochester*, 450 F.2d 118 (4th Cir. 1971), is likewise inapplicable here. *Rochester Corporation* is like the Wisconsin retirement cases we addressed in paragraphs 15 and 16 above. It involved an employer who attempted to change the requirements for pension benefits after the employee had fulfilled the requirements and retired. *Id.* at 120–22.

¶ 19. The plaintiffs also rely on *Reimer v. Badger Wholesale Co.*, 147 Wis. 2d 389, 433 N.W.2d 592 (Ct. App. 1988), for the proposition that employers are obligated to follow through on promises made to at-will employees. But *Reimer* does not support this broad proposition. A man named Reimer bargained with Badger Wholesale and reached an agreement in which Reimer would quit his job in Missouri, move to Wisconsin, and perform sales work for Badger if he was given a ninety-day trial period to make $10,000 in sales and

was assigned the Neenah-Menasha area as an exclusive sales territory. *Id.* at 391. After quitting his job, moving his family to Wisconsin, and arriving for work at Badger, the company failed to give Reimer the exclusive sales area promised and imposed minimum sales requirements that had not been part of the agreement. Badger fired Reimer after seventeen days for "lack of sales." *Id.* at 391–92.

¶ 20.  It appears that Reimer fulfilled his end of the bargain by showing up for work, but that Badger immediately breached the agreement by failing to provide the exclusive sales territory and ninety days to make $10,000 in sales. *See id.* We say "appears" because *Reimer* is a spare decision. Rather than affirmatively explain why Badger breached the employment contract, our opinion focused on rejecting Badger's argument that it was entitled to ignore the agreement because it could have simply discharged Reimer for any reason or for no reason at all. *Id.* at 392–93. Without explanation, we accepted the circuit court's "finding" that Reimer was an at-will employee. *Id.* at 393. We then made the unremarkable observation that an at-will employment situation does not "relieve Badger of its responsibility for any and all promises made to Reimer as a *prospective employee*." *Id.* (emphasis added). *Reimer* is more notable for what it does not say than for what it does. Pertinent here, we did not in *Reimer* even begin to explain the contours of a general rule binding employers to fulfill promises of future benefits to existing at-will employees.

¶ 21.  In sum, nothing the plaintiffs bring to our attention supports their assertion that the County had a contractual obligation to provide the 2003 wage increase.

*Promissory Estoppel*

■

¶ 22.    The plaintiffs argue that they are entitled to equitable relief under the doctrine of promissory estoppel. Promissory estoppel has three elements:    (1) the promise was one for which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise induced such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965).

■

¶ 23.    The plaintiffs assert that the County's promise to provide the 2003 wage increase induced forbearance causing injustice in two ways:    (1) the plaintiffs paid an increased contribution toward health insurance premiums in 2003, but did not receive the 2003 wage increase, and (2) the plaintiffs continued to work for the County in 2003, but did not receive the 2003 wage increase. Neither set of facts satisfies the applicable standard.

¶ 24.    The plaintiffs were informed as early as September 2002 and no later than November 2002 that they would not receive a wage increase in 2003. Assuming without deciding that, for purposes of a promissory estoppel claim, the 2000 ordinance constituted a "promise" by the County to give the plaintiffs 3% wage increases in 2003, none of the plaintiffs could have reasonably relied on that promise when paying increased health insurance premium contributions in 2003 because the promise had been withdrawn in 2002. Obviously, it is our conclusion that there is no evidence

in the record showing that the withdrawn promise induced any plaintiff to remain a county employee in 2003.

¶ 25. The plaintiffs may be implicitly arguing that, if they had received earlier notice that their wages would not increase in 2003, they would have left county service for better employment. But there is no evidence to support this argument. The promissory estoppel doctrine does not authorize relief based on the mere possibility that a plaintiff relied on a promise to his or her detriment.

¶ 26. It might be that if individual non-represented county employees affected by the county board's 2002 decision to revoke the 2003 wage increase brought individual promissory estoppel claims, some employees would be able to demonstrate entitlement to relief. However, the undisputed evidence in this record shows that the certified class of plaintiffs has no viable promissory estoppel claim.

¶ 27. In short, even assuming that the 2000 ordinance is accurately characterized as a "promise" for purposes of a promissory estoppel claim, the plaintiffs have failed to present evidence that such promise, having been revoked in late 2002, induced forbearance in 2003. Accordingly, the circuit court properly granted summary judgment in favor of the County on the plaintiffs' promissory estoppel claim.

*By the Court.*—Order affirmed.