PER CURIAM.
¶1 This appeal involves three promissory estoppel claims made by Amy Holzman against the Estate of Phyllis G. Holzman. Amy challenges orders granting summary judgment to the Estate as to these claims. We reject Amy's arguments and affirm.
Background
¶2 Amy's mother, Phyllis, died on September 11, 2013. In February 2014, Amy filed claims against Phyllis's estate, indicating that the claims were based on "[p]romissory estoppel" for "student loans, legal expenses, house and living expenses in connection with claimant's legal education and career." The total amount claimed was $ 600,000. In support, Amy attached a letter from Phyllis, dated December 29, 2012. Phyllis's signature was notarized. The apparent purpose of the letter was to attest to Amy's fitness to practice law. The letter begins: "I understand that Amy is being questioned by the Board of Law Examiners regarding whether she is fit to practice law and, specifically, whether she is a financially responsible person."
¶3 Much of Phyllis's letter has no relevance here. However, parts of the letter indicate promises made by Phyllis to Amy. First, Phyllis made a statement about paying for Amy to attend law school in Minnesota, where Amy lived during all times relevant to this appeal:
When Amy decided that it was finally time to go to law school (Amy has wanted to be a lawyer since she was a young child), I told [Amy] that I would pay for law school (as I had always promised) ....
Second, Phyllis made a statement about paying for Amy's living expenses while Amy was in law school:
When Amy decided that it was finally time to go to law school ... I told [Amy] ... that I would provide financial support to her while she was in law school and getting back on her feet.
Third, Phyllis made a statement about gifting Amy a house that Amy had once owned and that Amy had long lived in:
Furthermore, my husband gifted me Amy's home, which he bought when Amy was unable to work out a different resolution with her mortgage company and they placed her home in foreclosure, despite Amy's significant efforts to avoid such a predicament. I have told Amy that I will be gifting her home of ten years to her.
In the remainder of this opinion, we often refer to the "home" in this letter as the Minnesota property.
¶4 In response to Amy's promissory estoppel claims, the Estate filed three motions for partial summary judgment in 2017, seeking dismissal of each of the claims. The circuit court granted summary judgment in favor of the Estate, dismissing all three claims.
¶5 We provide further facts as necessary below.
Discussion
¶6 Amy argues that she was denied her statutory right to a trial under WIS. STAT. § 859.33(2).[1] According to Amy, because § 859.33(2) requires a trial in the probate context, summary judgment was improper. Amy also argues that summary judgment was improperly granted because disputed issues of material fact existed concerning her promissory estoppel claims. We reject both arguments in the sections below.
¶7 We pause, however, to note that the parties' appellate briefs contain references and arguments regarding whether promissory estoppel is available in this case and whether it matters that Phyllis never completed an inter vivos gift of the Minnesota property to Amy. We need not resolve the parties' arguments relating to these topics.
¶8 As to the availability of promissory estoppel claims in probate actions, either generally or under the particular facts here, the Estate has completely failed to explain why such a claim is unavailable and we will assume in Amy's favor, without deciding, that promissory estoppel claims are appropriate in probate actions.
¶9 As to the Estate's extensive discussion of the fact that Phyllis did not gift the Minnesota property to Amy during Phyllis's lifetime (an inter vivos gift), the Estate does not demonstrate that inter vivos law is logically or legally inconsistent with the application of promissory estoppel. In particular, the Estate's inter vivos gift argument fails to take into account the difference between, on the one hand, a simple incomplete gift and, on the other, the failure of a party to follow through on a promise that he or she reasonably should have expected would induce reliance and that actually resulted in reliance. Thus, we assume without deciding, again in Amy's favor, that the failure of Phyllis to gift the Minnesota property to Amy during Phyllis's lifetime does not undercut Amy's promissory estoppel claims.[2]
¶10 We turn, then, to what we conclude are dispositive reasons for why Amy's claims were properly dismissed on summary judgment.
A. Whether Summary Judgment May Be Applied to Dismiss Amy's Promissory Estoppel Claims
¶11 Citing to "shall" language in WIS. STAT. § 859.33(2), Amy contends that the circuit court was precluded from dismissing her claims on summary judgment because, under that subsection, the court must hold a trial on contested claims in a probate case. Section 859.33(2) provides:
If any claim, offset or counterclaim is contested, the court may require the issues to be made definite, fix a date for pretrial conference and direct the manner in which pleadings, if any, shall be exchanged. The court shall set a time for trial upon its own motion or upon motion of any party.
(Emphasis added.) Amy contends that the word "shall" in this probate-specific statute means that all claims against an estate must be tried and, therefore, may not be decided on summary judgment. In effect, Amy contends that estate litigants cannot be forced to respond to a motion for summary judgment with argument or evidentiary submissions but, instead, must be permitted to present any argument or evidence they may have at a trial, regardless whether there are actually material factual disputes.[3]
¶12 The Estate argues that summary judgment is available because the summary judgment statute applies to all civil actions, including probate actions. The Estate points to WIS. STAT. § 801.01(2), which provides, in pertinent part: "Chapters 801 to 847 govern procedure and practice in circuit courts of this state in all civil actions and special proceedings ...." Citing Ixonia State Bank v. Schuelke , 171 Wis. 2d 89, 93, 491 N.W.2d 772 (Ct. App. 1992), the Estate argues that "action" includes special proceedings such as probate. The Estate further points out that § 801.01(2) provides, in part, that "[c]hapters 801 to 847 shall be construed to secure the just, speedy and inexpensive determination of every action and proceeding." We do not opine on the validity of the Estate's statutory argument. Rather, we rely on three other grounds to reject Amy's statutory argument.
¶13 First, Amy does not respond to the Estate's statutory argument. We need not affirmatively weigh in on the merits of the Estate's argument to treat Amy's failure to respond as a concession on the topic. See State v. Normington , 2008 WI App 8, ¶44, 306 Wis. 2d 727, 744 N.W.2d 867 (2007) (an appellant's failure to refute a respondent's argument in the appellant's reply brief constitutes a concession).
¶14 Second, we conclude that it is unnecessary to go beyond the words of WIS. STAT. § 859.33(2) to reject Amy's statutory argument. Amy reads § 859.33(2) as effectively stating that a "court shall hold a trial." It does not. The subsection states that a "court shall set a time for trial" and does not state that a trial must be held. And, the subsection certainly does not contain language precluding summary judgment.
¶15 Third, Amy's reading of WIS. STAT. § 859.33(2) would lead to absurd results. It is axiomatic that the purpose of summary judgment is " 'to avoid trials where there is nothing to try.' " Caulfield v. Caulfield , 183 Wis. 2d 83, 91, 515 N.W.2d 278 (Ct. App. 1994) (quoted source omitted). Under Amy's view of the statute, estates and beneficiaries would be forced to endure meaningless trials. That is, they would be forced to engage in "trials" where there is nothing to try because the disputes hinge on purely legal questions. Requiring such trials would be an absurd result.
B. Whether Amy's Claims Were Properly Dismissed on Summary Judgment
¶16 Amy argues that summary judgment was improperly granted because disputed issues of material fact existed concerning her promissory estoppel claims. A party asserting promissory estoppel must prove that: (1) the promise was one that the promisor should reasonably have expected to induce either action or forbearance of a definite and substantial character by the plaintiff; (2) the promise did induce either action or forbearance; and (3) enforcement of the promise is necessary to avoid an injustice. U.S. Oil Co. v. Midwest Auto Care Servs., Inc. , 150 Wis. 2d 80, 89, 440 N.W.2d 825 (Ct. App. 1989). The second element is sometimes discussed in terms of "detrimental reliance." See Bicknese v. Sutula , 2003 WI 31, ¶13 n.2, 260 Wis. 2d 713, 660 N.W.2d 289 (explaining that promissory estoppel is an " 'equitable doctrine designed to prevent the harm resulting from ... reasonable and detrimental reliance' " (quoting Karnes v. Doctors Hosp. , 555 N.E.2d 280, 283 (Ohio 1990) )); Dunn v. Milwaukee Cty. , 2005 WI App 27, ¶25, 279 Wis. 2d 370, 693 N.W.2d 82 ("The promissory estoppel doctrine does not authorize relief based on the mere possibility that a plaintiff relied on a promise to his or her detriment.").
¶17 The first two elements of promissory estoppel are questions of fact, and the third is a policy question to be decided by the court in the exercise of its discretion. U.S. Oil , 150 Wis. 2d at 89.
¶18 We review summary judgment decisions de novo, applying the same methodology as the circuit court. Green Spring Farms v. Kersten , 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987). The methodology is well established, see, e.g. , Lambrecht v. Estate of Kaczmarczyk , 2001 WI 25, ¶¶21-24, 241 Wis. 2d 804, 623 N.W.2d 751, and we do not repeat that methodology here. Rather, we discuss various aspects of summary judgment as necessary below. As we explain, summary judgment was properly granted as to each of Amy's claims.
¶19 Before addressing Amy's claims individually, we note that Amy's summary judgment arguments suffer from at least three general flaws.
¶20 First, a substantial portion of Amy's argument focuses on the circuit court's reasoning. For that matter, the Estate also spends considerable time defending the circuit court's decision by discussing the circuit court's reasoning. However, our review is de novo. See Green Spring Farms , 136 Wis. 2d at 315-17 (overruling statements in prior cases indicating that it is appropriate to focus on the circuit court's decision). Thus, to the extent that Amy identifies problems with the circuit court's reasoning, it does her no good on appeal. A party's task is to directly argue for or against summary judgment.
¶21 Second, Amy appears to argue that the Estate must lose on summary judgment because the Estate did not produce evidence defeating Amy's promissory estoppel claim. This argument fails to take into account the fact that, at a trial, Amy would have the burden of proof on her promissory estoppel claims. See Silberman v. Roethe , 64 Wis. 2d 131, 150-54, 218 N.W.2d 723 (1974) (party alleging promissory estoppel has the burden). More specifically, while the moving party (here, the Estate) has the initial burden, the nonmoving party (here, Amy) has the burden of presenting specific facts establishing the elements on which she would have the burden of proof at trial. See Transportation Ins. Co. v. Hunzinger Constr. Co. , 179 Wis. 2d 281, 290, 507 N.W.2d 136 (Ct. App. 1993) ("The ultimate burden ... of demonstrating that there is sufficient evidence ... to go to trial at all (in the case of a motion for summary judgment) is on the party that has the burden of proof on the issue that is the object of the motion.").
¶22 Accordingly, to the extent Amy argues that summary judgment was improperly granted because the Estate did not produce evidence, her argument is flawed. Perhaps more to the point, Amy's arguments fail because of her failure to produce evidence, especially with respect to actual reliance, given her burden of proof on the issue.
¶23 Third, Amy seemingly fails to realize that a document she heavily relies on is not evidentiary for purposes of summary judgment. Amy repeatedly cites to document 147, a document signed by one of her attorneys.[4] For example, Amy's brief-in-chief makes the following assertions based solely on document 147:
[Amy] relied on Phyllis's promises-to gift the Minnesota Property to [Amy] and to pay her law school loans-in ways that cost her money. Specifically, [Amy] paid expenses for the Minnesota Property and borrowed hundreds of thousands of dollars (loans for which Phyllis co-signed) to go back to school.
Document 147, however, was filed in response to a court order directing Amy to "set forth a detailed analysis of her claims against the Estate together with the legal authorities supporting said claims." The document is signed by Amy's attorney at the time, Anne Plichta. We fail to discern any reason why we should treat this document as a source of facts for summary judgment purposes. The Estate does not admit the allegations in the document. There is no reason to suppose that pertinent factual assertions in the document are based on the attorney's personal knowledge. And the document does not purport to be a sworn statement. In sum, for summary judgment purposes, document 147 is not a recognized source of alleged facts, such as admissions, affidavits, depositions, and answers to interrogatories. See WIS. STAT. § 802.08(2).
¶24 Putting document 147 to the side, not much remains.
¶25 We will look to the letter written in December 2012 by Amy's mother Phyllis because before the circuit court, for purposes of summary judgment only, the Estate conceded the following propositions: that Phyllis promised to gift Amy the Minnesota property as alleged in the 2012 letter; that Phyllis made promises relating to Amy's living expenses as recited in the 2012 letter; and that Phyllis made promises relating to Amy's law school loans as recited in the 2012 letter. To be clear, the Estate does not, as to any of the three claims, concede that the promises are of a type that satisfies the first "promise" prong of promissory estoppel. But the Estate did concede before the circuit court, for purposes of summary judgment, that Phyllis made the promises recited in the 2012 letter. Accordingly, for purposes of our discussion below, we take the assertions in the 2012 letter at face value.
¶26 Amy does not direct our attention to any other documents in the record that might supply pertinent facts. We have located two affidavits executed by Amy in the record. Neither makes assertions about Phyllis's promises or Amy's reliance on such promises, but we do rely on the documents for some undisputed background facts in the discussion below.
¶27 Now, with Amy's burden of producing evidence in mind, and focusing our attention on the 2012 letter, we proceed to analyze separately the three claims Amy made against the Estate.
1. The Student Loans
¶28 Amy's student loan promissory estoppel claim, totaling $ 237,076.52 as of March 13, 2017, fails because Amy did not present evidence of actual reliance.
¶29 As we have explained, we assume there is evidence that Phyllis promised Amy that Phyllis would pay for law school for Amy. Phyllis wrote: "When Amy decided that it was finally time to go to law school ..., I told my daughter that I would pay for law school (as I had always promised) ...." We conclude that a fair reading of the "as I had always promised" parenthetical demonstrates that the promise predated Amy's decision to attend law school. And, we assume the promise included paying off student loans.
¶30 However, there is no evidence of reliance. That is, there is no evidence that Amy would not have attended law school but for Phyllis's promise. Obviously, it is common for aspiring lawyers to choose to attend law school, even knowing that they will incur substantial debt. And, as the Estate points out, with respect to the Estate's motion for summary judgment against Amy's student loan claim, Amy did not file any written or documentary response to the motion. Moreover, even during oral argument on the motion before the circuit court, Amy did not meaningfully address actual reliance.
2. Living Expenses
¶31 Amy's promissory estoppel claim for living expenses in connection with her legal education, which she states exceeded $ 55,000, fails on both the promise prong and the reliance prong of promissory estoppel.
¶32 The promise must be sufficiently specific that it would reasonably induce the promisee to either act or refrain from acting in a definite manner. See U.S. Oil , 150 Wis. 2d at 89. Here, Phyllis's promise as to living expenses is exceedingly vague.
¶33 The full extent of the "living expense" promise is this: "When Amy decided that it was finally time to go to law school ... I told my daughter ... that I would provide financial support to her while she was in law school and getting back on her feet." The promise does not state that Phyllis will pay all of Amy's living expenses. Phyllis did not in any manner define what she meant by "financial support." And, the duration of time covered is uncertain; there is no end date.
¶34 These are not minor points. As to what constitutes living expenses, do they include expenses Amy incurs traveling to visit friends? Eating out at restaurants? What amount or quality of clothing costs might be covered? The promise not only covers "while [Amy] was in law school," but also while Amy is "getting back on her feet." Does that mean that Phyllis promised to cover Amy's living expenses after law school if Amy still had financial problems?
¶35 We could say more, but the above discussion demonstrates that Phyllis's promise is too vague to induce reasonable detrimental reliance.
¶36 Turning to the actual reliance prong, there is simply no evidence at all. Strikingly, Amy's appellate briefing speaks in general categories, but does not attempt to specify particular expenses that we might treat as made in reliance on Phyllis's living expenses promise.
3. The Minnesota Property
¶37 Amy's promissory estoppel claim for the Minnesota property, which she asserted was worth $ 441,000 as of 2017, fails the reliance prong of promissory estoppel.
¶38 The Minnesota property promise statement in Phyllis's letter is limited to the following: "I have told Amy that I will be gifting her [the home that Amy has lived in for] ten years ...."[5]
¶39 We first observe that Phyllis does not specify when she told Amy that she would gift the home to Amy. The December 29, 2012 letter merely states: "I have told Amy ...." In her appellate brief, Amy asserts that the promise was made at the time her stepfather purchased the home in 2009. But her record cite for that proposition is document 147, which, as we have explained, is not evidentiary for purposes of summary judgment. Thus, because Amy failed to present evidence supporting an earlier date, we conclude that we must treat the promise as having been made on or shortly before December 29, 2012.
¶40 We need not discuss the questionable proposition that it would have been reasonable for Amy to expend any significant money on the Minnesota property based on vague promises of a future gifting. Rather, it is clear that Amy's Minnesota property claim fails on the reliance prong.
¶41 Apart from Amy's evidentiary problems, which we further address below, Amy does not argue that the amount she paid in property expenses exceeded the amount she would have paid for rent, at this property or any other. Thus, Amy does not provide the starting point for such an argument that she is in fact worse off than she would have been had Phyllis not promised to gift the property to her.
¶42 Amy also has a timing problem. Amy fails to recognize that the evidence, at best, supports a finding that Phyllis made the promise on or shortly before December 29, 2012. This failure, in turn, leads to a second failure-the failure of Amy to produce evidence of significant expenditures during a fairly small window of time. That is, the time period after the date of Phyllis's promise on or about December 29, 2012, and before Phyllis died in September 2013. Rather, Amy seemingly assumes that her reliance argument can be based on expenditures she made prior to Phyllis's promise and after Phyllis died. For example, Amy's appellate brief points to a time period before the promise, arguing: "Relying on the promise that she would ultimately own the Minnesota Property, [Amy] continued to contribute toward property taxes, insurance, utilities, and home maintenance expenses, even though Harvey Bernstein, LLC owned the property. " (Emphasis added.)
¶43 But Amy's failure on the reliance prong is even more fundamental. As we have explained, for purposes of summary judgment, the sources of possible undisputed facts are few. So far as we can tell, there is just Phyllis's letter and two affidavits executed by Amy. Nowhere in these documents is there evidence of any expenses incurred by Amy with respect to the Minnesota property. Accordingly, there is no arguable evidence of reliance-based expenditures.
Conclusion
¶44 For the foregoing reasons, we affirm the circuit court's orders dismissing Amy's promissory estoppel claims against the Estate.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version.

Amy argues, for the first time on appeal, that there is a factual dispute as to whether Phyllis gifted Amy the Minnesota property prior to Phyllis's death. We conclude that this is a frivolous argument. Nothing that Amy points to arguably supports the view that Phyllis gifted the property to Amy prior to Phyllis's death. Furthermore, to the extent that Amy points to any facts at all, she is pointing to a document that, as we later explain, has no value for summary judgment purposes.
We also observe that, in connection with her inter vivos gift arguments, Amy violates the rule against citing certain categories of unpublished authority. In that regard, Amy cites authored unpublished cases from 1979 and 1984. Amy additionally cites an unpublished 2015 per curiam opinion to support her argument that promissory estoppel applies in the probate context.
The Estate correctly points out that citations to the 1979 and 1984 cases have no precedential value pursuant to Wis. Stat. § 809.23(3)(b). However, the problem is not only the lack of precedential value. Such opinions "may not be cited in any court of this state as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case, and except as provided in par. (b)." Wis. Stat. § 809.23(3)(a). The § 809.23(3)(b) exception is limited to authored unpublished opinions issued on or after July 1, 2009, which may be cited for their persuasive value. Having cited § 809.23, it is troubling that the Estate proceeds to violate the same provision by relying on a 1982 authored unpublished opinion. In sum, this is substandard appellate practice on the part of both parties that improperly creates unnecessary costs for opponents and the court.

We identify in the text Amy's argument as a statutory argument. Amy's brief invokes due process in addition to its reliance on Wis. Stat. § 859.33(2). Amy, however, completely fails to support the proposition that the application of summary judgment to an estate dispute implicates due process. And, it is not apparent why the application of well-established summary judgment procedures to claims against an estate would create a fairness issue. Summary judgment, obviously, provides parties with the opportunity to demonstrate a need for a trial. If there is no need for a trial, it seemingly follows that the denial of a trial does not violate due process principles.

More precisely, the document Amy relies on is comprised of pages 1 to 8 of document 147. For ease of discussion, we refer to these pages as document 147.

For purposes of our analysis, we assume that Phyllis owned the Minnesota property at the time Phyllis promised to gift the property to Amy. Phyllis's letter states: "[M]y husband gifted me Amy's home ...." However, that assumption conflicts with an assertion made by Amy in an affidavit she executed and filed opposing her sister's effort to remove Amy as a co-personal representative of Phyllis's estate. In that affidavit, Amy averred that the Minnesota property was transferred from an LLC owned by her stepfather to Phyllis on June 7, 2013, a date several months after the date of Phyllis's letter. Indeed, Amy accurately states this same June 2013 transfer date in her appellate brief. It may be that Phyllis had reason to think that she would some day own the house and, thus, some day have the ability to gift the house to Amy. But Amy does not point to evidence supporting this view. We discuss the matter no further.