# Supreme Court of Wisconsin

| | |
|---|---|
| CASE NO.: | 2014AP1914 |
| COMPLETE TITLE: | McKee Family I, LLC and JD McCormick Company, LLC, |
| | Plaintiffs-Appellants-Cross-Respondents-Petitioners, |
| | v. |
| | City of Fitchburg, |
| | Defendant-Respondent-Cross-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at: 366 Wis. 2d 329, 873 N.W.2d 99

| | |
|---|---|
| OPINION FILED: | April 12, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 3, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | John C. Albert |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | Shirley S. Abrahamson and Rebecca Grassl Bradley, JJ. |

ATTORNEYS:

For the plaintiff-appellant-cross-respondent-petitioners, there were briefs by *Matthew Fleming* and *Murphy Desmond, S.C.,* Madison, and oral argument by Matthew J. Fleming

For the defendants-respondent-cross-appellant, there was a brief by *Lisa M. Lawless, Ross A. Anderson*, *Husch Blackwell, LLP,* Milwaukee and *Mark R. Sewell*, Fitchburg City Attorney, and oral argument by Lisa M. Lawless

An amicus curiae brief was filed by *Thomas Larson*, Madison for *Wisconsin Realtors Association, NAIOP Wisconsin and the Wisconsin Builders Association*.

An amicus curiae brief was filed by *Ryan J. Walsh*, Chief Deputy Solicitor General with whom on the brief was *Brad D. Schimel*, Attorney General and *Misha Tseytlin*, Solicitor General for *Wisconsin Attorney General and Department of Justice*.

An amicus curiae brief was filed by *Daniel M. Olson*, Madison for *League of Wisconsin Municipalities*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP1914
(L.C. No. 2010CV3808)

STATE OF WISCONSIN       :      IN SUPREME COURT

**McKee Family I, LLC and JD McCormick Company, LLC,**

        **Plaintiffs-Appellants-Cross-Respondents-Petitioners,**

    **v.**

**City of Fitchburg,**

        **Defendant-Respondent-Cross-Appellant.**

**FILED**

**APR 12, 2017**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. Petitioner, McKee Family I, LLC ("McKee") appeals an unpublished decision of the court of appeals affirming a circuit court grant of summary judgment in favor of the City of Fitchburg.[1] The court of appeals determined that McKee did not have a vested right under a planned

---

[1] McKee Family I, LLC v. City of Fitchburg, No. 2014AP1914, unpublished slip op. (Wis. Ct. App. Nov. 5, 2015) (affirming judgment and ordered entered by the circuit court for Dane County, John C. Albert, J., presiding).

development district zoning classification and that its constitutional claim failed as a result.

¶2 McKee contends that the court of appeals erred and that it is entitled to summary judgment in its favor. Acknowledging the fact that it did not submit an application for a building permit, it nevertheless argues that it had a vested right in developing land under the zoning classification.

¶3 According to McKee, vested rights accrue when a developer has made substantial expenditures or incurred substantial liability based upon reasonable expectations established by government action. It contends that to the extent that the zoning classification is contractual in nature it also creates expectations upon which developers may rely. Contingent on its vested rights arguments, McKee further asserts that it has a claim for damages under the Takings Clause of the United States Constitution.[2]

¶4 We conclude that McKee did not have a vested right in developing the property under the planned development district zoning classification because it did not apply for a building permit. Wisconsin follows the bright-line building permit rule that a property owner's rights do not vest until the developer has submitted an application for a building permit that conforms

---

[2] The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend V.

to the zoning or building code requirements in effect at the time of application. Lake Bluff Hous. Partners v. City of S. Milwaukee, 197 Wis. 2d 157, 172, 540 N.W.2d 189 (1995).

¶5 Additionally, we determine that a planned development district zoning classification does not create contractual expectations upon which developers may rely. There is a very strong presumption that legislative enactments do not create contractual or vested rights. Dunn v. Milwaukee Cty., 2005 WI App 27, ¶8, 279 Wis. 2d 370, 693 N.W.2d 82 (citation omitted). Further, there must be a clear indication that a legislative body intends to bind itself contractually in order to overcome the presumption. Nat'l R.R. Passenger Corp. v. Atchinson, Topeka and Santa Fe Ry. Co., 470 U.S. 451, 465-66 (1985). McKee failed to overcome the presumption that Fitchburg did not intend to enter into a binding contract when it enacted an ordinance approving the zoning classification.

¶6 Finally, we do not need to reach McKee's constitutional takings claim because McKee conditioned its takings claim on its claim for vested rights. Because McKee has no vested right in a planned development district zoning classification, it cannot succeed on its asserted contingent takings claim.

¶7 Accordingly, we affirm the decision of the court of appeals affirming the circuit court's grant of summary judgment in favor of the City of Fitchburg.

I

¶8 This case involves a dispute about a change in the municipal zoning classification of property that McKee owns in Fitchburg. Specifically, McKee objects to Fitchburg's rezoning of two lots (53 and 54) from a planned development district ("PDD") zoning classification to a residential-medium ("R-M") zoning classification. To provide the necessary context, we begin by explaining Fitchburg's process for adopting a zoning classification.

¶9 Pursuant to Wis. Stat. § 62.23 (2013-14), municipalities may use a PDD zoning classification to establish planned mixed-use developments that have a higher density than is allowed under an R-M classification.[3] The R-M zoning

_____

[3] Wis. Stat. § 62.23(7)(b) provides in relevant part:

[T]he council may divide the city into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this section; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land . . . The counsel may establish mixed-use districts that contain any combination of uses, such as industrial, commercial, public, or residential uses, in a compact urban form. The council may with the consent of the owners establish special districts, to be called planned development districts, with regulations in each, which . . . will over a period of time tend to promote the maximum benefit form coordinated area site planning, diversified location of structures and mixed compatible uses. . . .

All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

4

classification allows development of only single-family or duplex structures.

¶10 Before a property owner can develop land that is zoned under the PDD classification, Fitchburg's General Ordinances require the property owner to submit a general implementation plan ("GIP") to Fitchburg's Plan Commission. Fitchburg, Wis., Gen. Ordinances §§ 22-593, 22-594 (2015).[4] The Plan Commission then makes a determination and recommendation whether to advise the Fitchburg Common Council to approve the rezoning and GIP, to approve it with modifications, or to deny it. Id. § 22-594(b).

¶11 If Fitchburg approves a general plan, a property owner is then required to submit a specific implementation plan ("SIP"). Id. § 22-599. A property owner is allowed to apply for a building permit if Fitchburg approves the SIP. Id. § 22-597.

¶12 The relevant zoning history of this case extends back to 1989, when McKee Brothers Partnership agreed to dedicate approximately 60 acres of farmland to the City of Fitchburg. This farmland, which became McKee Farms Park, was donated to fulfill Fitchburg's park land dedication requirements for a variety of McKee Brothers' projects, including the property at issue in this case. Credit for the parkland allocation was determined by a settlement agreement, which gave McKee Brothers

---

[4] The references to the Fitchburg General Ordinances in paragraph 11 are also to the 2015 version of the ordinances.

the right to build 600 dwelling units on a variety of lands it owned.

¶13 Over the years, the property at issue has been transferred between various McKee entities. After the parkland dedication, McKee Brothers transferred the property to MAF Development, Inc., to create the Plat of Chapel Valley.[5] The plat included four lots, the two undeveloped lots at issue (53 and 54), as well as two additional lots that have already been developed (10 and 11).

¶14 In conjunction with the creation of the Plat of Chapel Valley, MAF Development entered into an agreement with Fitchburg that it would make improvements in preparation for developing its land. The required improvements included: standard street improvements, installation of sidewalks, walkways and driveways, sanitary sewers, water mains laterals and easements, drainage facilities, grading and landscaping, erosion control, and electric, communications and gas facilities.

¶15 At the time the plat was created, it had an R-M zoning classification, but MAF Development applied for and received approval for rezoning to a PDD classification. When Fitchburg enacted Ordinance No. 94-O-11 rezoning Lots 10, 11, 53, and 54 from R-M to PDD zoning, it also approved MAF Development's general implementation plan for developing the property.

---

[5] William F. McKee was the president of MAF Development.

¶16 As the general plan explained, the proposed development would provide "high quality multi-family housing that is in strong demand" for "mature adults." Citing the "lack of housing options for mature adults in the Fitchburg area," the proposed development was intended to complement the "Independent Living" and "Elder Care" developments nearby. The GIP explained that the "formation of such a 'senior community' will serve the community by making the most efficient use of public and private services these people will require."

¶17 Lots 10 and 11, which are not at issue in this case, were developed between 1995 and 2002 under the PDD-GIP zoning plan with assisted living facilities, senior housing and senior condominiums. Lots 53 and 54 were not developed and were eventually deeded from MAF Development to McKee in 2007.

¶18 In 2008, more than a decade after Fitchburg approved the planned development district zoning and MAF Development's general implementation plan, McKee and JD McCormick Company, LLC ("McCormick"), entered into negotiations for McCormick to purchase the undeveloped lots 53 and 54 from McKee. The purchase agreement was contingent on McCormick's ability to obtain approval from Fitchburg to build 128 apartment units on the lots.[6]

---

[6] McCormick was a plaintiff in this action before the circuit court granted Fitchburg's motion to dismiss McCormick from the case for lack of standing. McCormick did not appeal the order dismissing it from the case and McKee did not raise the issue on appeal.

¶19 McCormick presented a plan for a 128-unit apartment complex on Lots 53 and 54 at a Fitchburg neighborhood meeting. Fitchburg residents expressed concern about the effect of the proposed development on traffic, crime and housing values. The neighborhood's objections were set forth in a petition signed by 600 Fitchburg residents detailing concerns about the scale and density of the proposed development:

> If a rental development of this scale and density were built . . . it would result in significant increases in and unacceptable levels of traffic, noise, litter, vandalism, storm water run-off, and would significantly impact the quality of life and the property values of those already residing in our neighborhoods.

In particular, Fitchburg residents were concerned that the proposed development did not comport with the original PDD-GIP plan to develop senior housing.

¶20 Despite these objections, McCormick prepared a PDD-SIP application for the 128-unit apartment complex on lots 53 and 54. The proposed development consisted of four three-story 32-unit apartment buildings, with a clubhouse and a pool. It hired an architect, engineer, and landscape architect, but there is no evidence in the record regarding the costs McCormick incurred.

¶21 After McCormick submitted the specific plan, two Fitchburg Common Council members submitted a rezoning application and draft ordinance to rezone lots 53 and 54 from PDD-GIP to R-M. McKee and McCormick then filed a revised application for PDD-SIP approval. Following a public hearing,

Fitchburg adopted Ordinance 2009-O-03, which rezoned the property from PDD-GIP to R-M.

¶22 Under the R-M zoning classification, McCormick was limited to developing 28 dwelling units, compared to a maximum of 132 dwelling units under the PDD zoning classification. McKee and McCormick filed a lawsuit seeking declaratory judgment, damages and injunctive relief on the grounds that the rezoning of the lots was unlawful.

¶23 The amended complaint asserted two claims. First, it alleged that Ordinance 2009-O-03 is void as a matter of law because it was adopted by Fitchburg without the consent of the owner of the property, contrary to Wis. Stat. § 62.23(7)(b). Second, it alleged that if Fitchburg "wrongfully adopted Ordinance 2009-O-03, and wrongfully refused to process and approve the PDD-SIP application," then McKee was deprived of the full economic use of the property and from earning a reasonable return on its respective investment. McKee further alleged that it was deprived of substantive and procedural due process guarantees in violation of the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, Section 13 of the Wisconsin Constitution.

¶24 The parties filed cross-motions for summary judgment. At issue here is the circuit court's grant of summary judgment in favor of Fitchburg. On summary judgment, the circuit court dismissed McKee's first claim, determining that Lots 53 and 54 were rezoned in accordance with Wis. Stat. § 62.23(7)(b) and the relevant local ordinances. The circuit court did not reach

9

McKee's constitutional takings claim because it was conditioned on the dismissed first claim.

¶25 McKee appealed the circuit court's summary judgment order. On appeal, however, McKee did not argue that the rezoning ordinance was void under Wis. Stat. § 62.23(7)(b) for lack of consent. Instead, McKee asserted that it had a vested right in the PDD zoning classification, that the PDD classification created a contract that gives rise to expectations on which developers may rely, and that the rezoning ordinance constituted a taking under the Fifth Amendment to the United States Constitution.

¶26 The court of appeals determined that McKee did not have a vested right in the PDD zoning classification when Fitchburg rezoned the lots. McKee Family I, LLC v. City of Fitchburg, No. 2014AP1914, unpublished slip op., ¶32 (Wis. Ct. App. Nov. 5, 2015). It declined to address McKee's constitutional taking argument, concluding that it was an undeveloped argument. Id., ¶32 n.6.

II

¶27 In this case we are asked to review the court of appeals decision affirming the circuit court's grant of summary judgment in favor of the City of Fitchburg. We review a decision granting summary judgment independently of the determinations rendered by the circuit court and the court of appeals. Lambrecht v. Estate of Kaczmarczyk, 2001 WI 25, ¶21, 241 Wis. 2d 804, 623 N.W.2d 751. Summary judgment is appropriate when there is no genuine issue as to any material

10

fact and a party is entitled to judgment as a matter of law. Id., ¶24.

¶28 At issue is whether McKee has a vested right in the zoning classification and whether the classification creates contractual expectations upon which McKee may rely. We additionally address whether a constitutional takings claim can be maintained. These issues present questions of law that this court reviews independently of the determinations rendered by the circuit court and the court of appeals. Zealy v. City of Waukesha, 201 Wis. 2d 365, 372, 548 N.W.2d 528 (1996).

III

¶29 We must address first whether McKee forfeited the arguments it raised for the first time on appeal. Fitchburg contends that McKee did not appeal the claims dismissed by the circuit court on summary judgment. According to Fitchburg, McKee forfeited the arguments it now advances because they were raised for the first time on appeal.

¶30 Although the circuit court dismissed McKee's claim that Ordinance 2009-O-03 was void for lack of consent, it did not appeal that issue. Instead, on appeal McKee asserts that it has a vested right in developing lots 53 and 54 under the PDD zoning classification due to expenditures incurred based upon reasonable expectations established by government action. McKee further asserts that to the extent the zoning classification is contractual in nature, it also creates expectations upon which developers may rely.

11

¶31 Contingent on its vested rights arguments, McKee contends that it has a claim for damages under the Takings Clause of the United States Constitution.

¶32 Generally, issues not raised or considered by the circuit court will not be considered for the first time on appeal. State v. Holland Plastics Co., 111 Wis. 2d 497, 504, 311 N.W.2d 320 (1983). However, it is within this court's discretion to "disregard alleged forfeiture or waiver and consider the merits of any issue because the rules of forfeiture and waiver are rules of 'administration and not of power.'" State v. Beamon, 2013 WI 47, ¶49, 347 Wis. 2d 559, 830 N.W.2d 681. The arguments raised on appeal have been briefed and argued by both parties. Accordingly, we choose to address McKee's arguments set forth above in order to clarify the important issues of law that are presented in this case.

IV

¶33 The primary issue before this court is whether McKee had a vested right in the PDD zoning classification before Fitchburg rezoned the land to the R-M zoning classification. Despite the fact that it was not eligible for, and did not apply for a building permit, McKee asserts that it had a vested right in the PDD zoning classification.

¶34 McKee contends that this court should depart from Wisconsin's bright-line building permit rule and evaluate whether a developer has vested rights on a case-by-case basis. It argues that Fitchburg should not have had the discretion to change zoning regulations before a building permit was approved

12

because McKee had already made substantial expenditures in preparation for development under the PDD-GIP zoning.

¶35 We begin with the basic premise that municipalities have broad discretion to enact zoning ordinances and land use regulations for a variety of purposes:

> For the purpose of promoting health, safety, morals or the general welfare of the community, the council may regulate and restrict by ordinance . . . the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces . . . the density of population, and the location and use of buildings, structures and land for trade, industry, mining, residence or other purposes if there is no discrimination against temporary structures.

Wis. Stat. § 62.23(7)(am). Any ordinance adopted under this section "shall be liberally construed in favor of the city." Id.

¶36 Additionally, "reliance on a particular zoning designation applicable to [a landowner's] property does not suffice to give the landowner a vested right to such designation." Rainbow Springs Golf Co. v. Town of Mukwonago, 2005 WI App. 163, ¶12, 284 Wis. 2d 519, 702 N.W.2d 40 (citing Zealy, 201 Wis. 2d at 381). A "vested right" is a "right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." Stoker v. Milwaukee Cty., 2014 WI 130, ¶24, 359 Wis. 2d 347, 857 N.W.2d 102 (quoting Black's Law Dictionary 1520 (10th ed. 2014)).

13

¶37 The exception to the rule that zoning does not create vested rights arises when a property owner has applied for a building permit conforming to the original zoning classification. See Lake Bluff, 197 Wis. 2d at 182. In Lake Bluff, this court concluded that the developer "obtained no vested rights, because it never submitted an application for a building permit conforming to the zoning and building code requirements in effect at the time of the application." Id.

¶38 Lake Bluff explained that "[o]ur cases have consistently held that no rights vest in such an instance" when a building permit has not been obtained. Id.; see also State ex rel. Humble Oil & Ref. Co. v. Wahner, 25 Wis. 2d 1, 13, 130 N.W.2d 304 (1964); Vil. of Hobart v. Brown Cty., 2005 WI 78, ¶28, 281 Wis. 2d 628, 698 N.W.2d 83. Therefore, Lake Bluff reasoned that the developer "did not possess the 'clear, specific legal right which is free from substantial doubt' that is required in an action for mandamus." Lake Bluff, 197 Wis. 2d at 182 (quoting Collins v. Am. Family Mut. Ins. Co., 153 Wis. 2d 477, 483, 451 N.W.2d 429 (1990)).

¶39 McKee argues first that Lake Bluff's building permit rule should be limited to the facts of that case because the developer in Lake Bluff requested relief in the form of a writ of mandamus. According to McKee, Lake Bluff declined to consider the developer's substantial expenditures in determining whether it had vested rights because a writ of mandamus requires "strict and complete compliance with all necessary and applicable provisions of the relevant ordinance . . ." Id. at

14

174 (quoting 4 Edward H. Ziegler, Jr., Rathkopf's The Law of Zoning and Planning, § 44.04[1], at 44-14 to 44-15 (4th ed. 1956 & Supp. 1994) (footnotes omitted)). Thus, McKee asserts that because it brought claims for declaratory judgment and damages arising from alleged constitutional violations, the permit rule should not be applied here given that the requested remedies are distinguishable from the relief requested in the writ of mandamus in Lake Bluff.

¶40 We decline McKee's invitation to limit Lake Bluff to cases in which a developer seeks relief in the form of a writ of mandamus. The Lake Bluff court did not base its decision on the developer's requested remedy. Instead, it reasoned that "[f]rom the very beginning of zoning jurisprudence in this state [] a building permit has been a central factor in determining when a builder's rights have vested." Id. at 172.

¶41 Indeed, Lake Bluff considered prior Wisconsin case law on this issue in reaching its decision and explained that "a common factor . . . was the presence or absence of a building permit." Id. at 172. As Lake Bluff explained, Building Height Cases examined three separate cases and ruled on the nature of the vested rights, if any, in each case. Id. at 171 (citing State ex rel. Klefisch v. Wisconsin Tel. Co. (*Building Height Cases*), 181 Wis. 519, 195 N.W. 544 (1923)). In two of the cases it examined whether there were vested rights when the developer obtained a permit. However, in the third case where there was no application for a permit, there were no vested rights. Id. at 172.

15

¶42 Underlying the vested rights doctrine is the theory that a developer is proceeding on the basis of a reasonable expectation. Id. at 175 (citing State ex rel. Cities Serv. Oil Co. v. Bd. of Appeals, 21 Wis. 2d 516, 528-29, 124 N.W.2d 809 (1963); 8 McQuillin Mun. Corp. § 25:157 at 701 (3d ed. 1991). As Lake Bluff explained, "[r]equiring an application for a building permit which conforms to applicable zoning or building code requirements in order to show a clear legal right also serves the goals of the vested rights doctrine." 197 Wis. 2d at 175.

¶43 Wisconsin applies the bright-line building permit rule because it creates predictability for land owners, purchasers, developers, municipalities and the courts. See, e.g., Guertin v. Harbour Assurance Co. of Bermuda, 141 Wis. 2d 622, 634-35, 415 N.W.2d 813 (1987) (explaining that bright line rules provide predictability and protect all parties). It balances a municipality's need to regulate land use with a land owner's interest in developing property under an existing zoning classification. A municipality has the flexibility to regulate land use through zoning up until the point when a developer obtains a building permit. Once a building permit has been obtained, a developer may make expenditures in reliance on a zoning classification.

¶44 In contrast, the rule proposed by McKee, which would require a case-by-case analysis of expenditures, would create uncertainty at the various stages of the development process. Nevertheless, McKee urges this court to follow other

16

jurisdictions, which it contends recognize expenditures made after a municipality approved the development of plats of land. See, e.g., Telimar Homes, Inc. v. Miller, 14 A.D.2d 586, 587 (1976); Milcrest Corp. v. Clackamas Cty., 650 P.2d 963, 967 (1982). According to McKee, "the concept of fair play and protection of settled expectations demands a more flexible and searching inquiry than bright-line rules such as the building permit test can provide."

¶45 For the reasons set forth above, we decline to adopt this approach. Additionally, we observe that even if this court were to determine that a rule based on substantial expenditures should apply here, McKee's claim would fail because it has not introduced evidence supporting its claims.

¶46 We previously addressed the two-fold impediments of failure to apply for a building permit along with the failure to present evidence in support of the claim. In Zealy, the court determined that the developer did not have a vested right to the former residential zoning on his land. 201 Wis. 2d at 381-82. It reasoned that "Zealy has not shown that he made any expenditures in reliance on the zoning, nor has he ever submitted an application for a building permit proposing a residential use of the land." Id. McKee's claim suffers from the same lack of evidence of expenditures made in reliance on the PDD zoning as well as the failure to submit an application for a building permit.

¶47 In sum, we decline to depart from Wisconsin's bright-line building permit rule. A property owner's rights do not

17

vest until the developer has submitted an application for a building permit that conforms to the zoning or building code requirements in effect at the time of application. Lake Bluff, 197 Wis. 2d at 182. It is undisputed that McKee did not apply for a building permit. Like the court of appeals, we conclude that McKee did not have a vested right in developing the property under the PDD zoning classification because it did not apply for a building permit.

V

¶48 We turn next to McKee's argument that to the extent the zoning classification is contractual in nature it also creates expectations upon which developers may rely.

¶49 McKee bases this assertion on the City of Fitchburg Ordinances that set forth the procedures for the PDD zoning process that were in effect at the time the PDD-GIP was adopted. Specifically, McKee relies on language in the Ordinances that referred to a PDD zoning classification as "an agreement [that] is reached between the property owner and the City of Fitchburg." Fitchburg, Wis., Gen. Ordinances § 22.82. Additionally, McKee contends that section 22.91, which stated that "[t]he City Council shall approve a Specific Implementation Plan that is reasonably consistent with the previously approved General Implementation Plan," is an expression of intent to create expectations upon which developers are expected to rely. Fitchburg, Wis., Gen. Ordinances § 22.91.

¶50 According to McKee, we should interpret the language of the Fitchburg Ordinances as expressing an intention to create

18

expectations upon which developers are entitled to rely. Thus, McKee asserts that we should decline to apply the building permit rule, because it contends that a planned development district is a form of negotiated zoning that a developer may rely upon once it is adopted by Fitchburg.

¶51 McKee's argument here contravenes the strong presumption that legislative enactments do not create contractual rights. Dunn, 279 Wis. 2d 370, ¶8 (citing Morrison v. Bd. of Educ. of City of W. Allis, 237 Wis. 483, 487-88, 297 N.W. 383 (1941)). Treating legislative acts as contracts would "enormously curtail the operation of democratic government." Id., ¶9 (quoting Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1104 (7th Cir. 1995)).

¶52 It is a well-established principle that "[o]ne legislature may not bind a future legislature's flexibility to address changing needs." Flynn v. Dep't of Admin., 216 Wis. 2d 521, 543, 576 N.W.2d 245 (1998). Accordingly, a current city government "may not enact a statute which has 'implications of control over the final deliberations or actions of future legislatures.'" Id.

¶53 The facts of this case demonstrate why a legislative body must have the flexibility to adopt and repeal legislation in response to its community's changing needs. Lots 53 and 54 were undeveloped for fifteen years after Fitchburg approved the PDD-GIP, yet McKee asserts that the current Fitchburg Common Council is contractually bound by a city ordinance adopted in 1994.

19

¶54 The original GIP proposed a development for "mature adults," citing the "lack of housing options for mature adults in the Fitchburg area." It was intended to compliment the "Independent Living" and "Elder Care" developments nearby. The GIP explained that the "formation of such a 'senior community' will serve the community well by making the most efficient use of public and private services these people will require."

¶55 Lots 10 and 11, which are not at issue in this case, were developed between 1995 and 2002 under the PDD zoning plan with assisted living facilities, senior housing and senior condominiums. In 2008, more than a decade after the PDD-GIP zoning was approved, McCormick presented a plan for a 128-unit apartment complex on lots 53 and 54 at a Fitchburg neighborhood meeting. The development proposed in 2008 consisted of four three-story 32-unit apartment buildings, with a clubhouse and a pool.

¶56 In a petition signed by 600 Fitchburg residents, the neighborhood detailed its concerns about the scale and density of the proposed development:

> If a rental development of this scale and density were built . . . it would result in significant increases in and unacceptable levels of traffic, noise, litter, vandalism, storm water run-off, and would significantly impact the quality of life and the property values of those already residing in our neighborhoods.

The primary focus of concern was that the proposed development did not comport with the original PDD-GIP plan to develop senior housing.

20

¶57 The concerns of Fitchburg's citizens in this case demonstrate why the legislature must have flexibility to address the changing needs of the community. See Flynn, 216 Wis. 2d at 543. Although Fitchburg adopted the PDD-GIP in 1994, it needed to be able to respond to the changing development needs of the community in 2008.

¶58 Not only was the development far different than what was originally proposed, McCormick would have been the fourth owner of the property since McKee Brothers Partnership dedicated parkland to Fitchburg in 1989. Subsequent to the parkland dedication, the property was transferred to MAF, which in 1994 applied for and received approval for rezoning to a PDD classification. Eventually, MAF deeded lots 53 and 54 to McKee, which now argues that the potential purchaser, McCormick, has the same zoning right granted to MAF in 1994 and reliance rights arising from the parkland dedication in 1989.

¶59 As the United States Supreme Court has explained, there must be "some clear indication that the legislature intends to bind itself contractually" in order to overcome the presumption that a law is not intended to create private contractual rights. Nat'l R.R. Passenger Corp., 470 U.S. at 465-66 (1985). McKee points to no evidence other than the language of the ordinances in setting forth the development process as support for its argument that PDD zoning created a contract upon which it was entitled to rely. Accordingly, McKee failed to overcome the presumption that Fitchburg did not intend

to enter into a binding contract when it enacted the 1994 Ordinance approving the PDD zoning classification.

¶60 Finally, we observe that we need not consider McKee's argument that the rezoning of Lots 53 and 54 constituted a taking.

¶61 McKee brought its takings claim as contingent on its claim for vested rights, contending it had a takings claim only if this court determined that it had a vested right in the PDD zoning classification. In its amended complaint, McKee alleged that it suffered a taking in violation of the Fifth and Fourteenth Amendments "in the event that the Court finds that the Defendant wrongfully adopted Ordinance 2009-O-03, and wrongfully refused to process and approve the PDD-SIP application . . . ." Likewise, in its opening brief McKee argues that "[f]inding vested rights will revive McKee's takings claim." Finally, at oral argument, McKee reiterated "you cannot have a taking without a vested right."

¶62 As asserted, McKee's takings claim is contingent on the success of his vested rights claim. Having failed on his vested rights claim, his takings claim does not survive.

VI

¶63 We conclude that McKee did not have a vested right in developing the property under the planned development district zoning classification because it did not apply for a building permit. Wisconsin follows the bright-line building permit rule that a property owner's rights do not vest until the developer has submitted an application for a building permit that conforms

22

to the zoning or building code requirements in effect at the time of application. Lake Bluff, 197 Wis. 2d at 182. It is undisputed that McKee did not apply for a building permit.

¶64 Additionally, we determine that a planned development district zoning classification does not create contractual expectations upon which developers may rely. There is a very strong presumption that legislative enactments do not create contractual or vested rights. Dunn, 279 Wis. 2d 370, ¶8 (citation omitted). Further, there must be a clear indication that a legislative body intends to bind itself contractually in order to overcome the presumption. Nat'l R.R. Passenger Corp., 470 U.S. at 465-66. McKee has not overcome the presumption that Fitchburg did not intend to enter into a binding contract when it enacted an ordinance approving the zoning classification.

¶65 Finally, we do not need to reach McKee's constitutional takings claim because McKee conditioned its takings claim on its claim for vested rights. Because McKee has no vested right in a PDD zoning classification, it cannot succeed on its asserted contingent takings claim.

¶66 Accordingly, we affirm the decision of the court of appeals affirming the circuit court's grant of summary judgment in favor of the City of Fitchburg.

¶67 SHIRLEY S. ABRAHAMSON and REBECCA GRASSL BRADLEY, JJ., did not participate.