SCHEER, Appellant, v. WEIS, Respondent.

*March 10—April 4, 1961.*

410

For the appellant there were briefs by *Grootemaat, Cook & Franke* of Milwaukee, and oral argument by *Harry F. Franke*.

For the respondent there was a brief and oral argument by *Harry J. Hayes,* village attorney of Whitefish Bay.

FAIRCHILD, J. 1. *Plaintiff's claim that the Bond lot could not be divided into two sites.* The zoning ordinance of the village defines "lot" as follows:

"A lot is a parcel of land in single ownership occupied or designed to be occupied by one building and the accessory buildings or uses customarily incident to it, including such open spaces as are required by this code and such open spaces as are arranged and designed to be used in connection with such building." (Sec. 14.02 (19).)

Plaintiff makes two arguments based on this definition. He points out correctly that the Bond lot as previously used fitted the definition of "lot." He argues that the definition implies that once a parcel fulfils the definition of "lot," it cannot thereafter be divided into two parcels each fulfilling the definition of "lot." We do not find the implication he contends is present. His other argument is that "lot" means a "platted lot" and that the quoted definition implies a prohibition against two dwellings located on parts of the same "platted lot."

We do not agree with either argument. The quoted definition of "lot" fits the Bond lot as it has been used up to the

time of the conveyance. It also fits the Jordan-Jefferson lot as proposed to be used in the future. We find nothing in the ordinance which says expressly, or by implication, that once a parcel is used as a single lot, it can never thereafter be divided, nor that platted lots must never be split in creating a "lot" as defined in the ordinance. At least one provision of the ordinance, to be mentioned hereinafter, uses the term "platted lot" where a reference to that type of lot is clearly intended. The ordinance contains many other requirements which must be fulfilled by each "lot," *i.e.*, minimum area, percentage of area occupied by a dwelling, setbacks, side and rear yards, and the like. The platted lots in this case do not fulfil minimum-frontage requirements of the ordinance, and one of them does not fulfil minimum-area requirements. It appears that the requirements which relate to "lots" are to be applied to a parcel which is used, or is to be used as a "lot" as defined, rather than to "platted lots" as such. We think that the fact that the Jordan-Jefferson lot contains only portions of three platted lots is immaterial under the particular ordinance. Compliance is to be determined by applying the provisions of the ordinance to the Jordan-Jefferson lot as it is proposed to be used.

Plaintiff also argues that the division of the Bond lot into two lots, and the incidental division of the three platted lots cannot be legally effected without replatting pursuant to ch. 236, Stats. We do not agree. Sec. 236.03, Stats., is mandatory as to any division of land which results in a subdivision as defined in sec. 236.02. A subdivision is defined as:

"(8) . . . a division of a lot, parcel, or tract of land by the owner thereof or his agent for the purpose of sale or of building development, where:
"(a) The act of division creates five or more parcels or building sites of one and one-half acres each or less in area; . . ."

The division here results only in two parcels or building sites, and hence, sec. 236.03 (1), Stats., does not require a new plat.

*2. Compliance with setback requirements.* Except for side setbacks, plaintiff makes no claim that the proposed use of the Jordan-Jefferson lot will violate any area, percentage of occupancy, or other similar requirement if the ordinance is applied specifically to the Jordan-Jefferson lot. With respect to the particular requirement, compliance with which is challenged, the ordinance does use the term "platted lot." Sec. 14.14 provides, in part:

"If any building or accessory building is constructed . . . to front on the long side of a platted lot, at least twice the side setback indicated on such side-setback map on the long side of said lot as platted shall be maintained as the front setback and the side setback shall be at least equal to the front setback indicated on such front-setback map on the short side of said lot as platted."

The distance between the proposed buildings and the boundaries of the Jordan-Jefferson lot are as follows: At the front, north, 16 feet. The north side of the platted lot is its long side, and it is conceded that 16 feet is twice the applicable side setback. At the east side, the building will be 10.03 feet from the lotline, and at the west side five feet from the lotline. These distances are sufficient side yards under the ordinance unless more is required by sec. 14.14 above quoted. The applicable front setback from North Larkin street is 25 feet. Plaintiff argues that the ordinance requires a distance of 25 feet between the lotline to the east and the proposed building, and seems to suggest that the same requirement would apply to the west. A side setback as defined in sec. 14.14 is, however, "the width of the side yard abutting upon a public highway." Neither the side yard to the east nor west abuts on a highway, and accordingly the side-setback requirement is inapplicable.

3. *Jurisdiction of the court.* Defendant has questioned the jurisdiction of the circuit court to enjoin the building inspector from issuing the permit. Defendant suggests that if plaintiff has a sufficient interest to challenge the validity of the permit, he must wait until it is issued and then appeal to the board of appeals, thus pursuing his administrative remedy. The procedure suggested by defendant seems more orderly, and we know of no reason why it would not be an adequate remedy.[1] Plaintiff, however, asserted by affidavit that he would be irreparably harmed if the permit were issued. No answer is yet on file. We have no difficulty in sustaining the order of the circuit court upon the merits and therefore do not decide the jurisdictional question.

4. *Application by owner.* Plaintiff points out that although Jordan-Jefferson, Inc., contracted to purchase the Jordan-Jefferson lot from Mr. Bond before it applied for the permit, the legal title was not conveyed to it until after the application. The ordinance requires application by "the owner or his agent." The vendee under a contract to purchase land is the equitable owner and is the "owner" for many purposes.[2] We think that the vendee is an owner for the purpose of applying for a building permit under the village ordinance.

5. *Appearance on behalf of defendant.* The village president is an attorney. He acted as attorney for Mr. Bond in the transaction with Jordan-Jefferson, Inc. That contract provides that Mr. Bond shall receive one half the profit on the proposed construction. When the matter was before the circuit court, the village president appeared as attorney for the defendant building inspector, defending the validity

---

[1] In the present action, plaintiff seeks an injunction against the building inspector and not an injunction against the offending property owner as in *Diehl v. Dunn,* ante, p. 280, 108 N. W. (2d) 519.

[2] *Mueller v. Novelty Dye Works* (1956), 273 Wis. 501, 78 N. W. (2d) 881.

of the proposed permit. He apparently did so as a substitute for the village attorney. The village attorney appeared and argued the matter before us.

Plaintiff claims that he is entitled to a new hearing because the village president rather than the village attorney represented the defendant in the circuit court.

We consider that the village president, under these circumstances, ought not to have acted in place of the village attorney in the circuit court. His private client had a continuing interest in the issuance of the permit. Until the validity of the permit was finally determined by the court, there was a possible conflict between the interest of his private client and his duty to the village to see that the matter was correctly decided according to law.

This provides no reason, however, for ordering a new hearing in the circuit court. The facts were undisputed. The terms of the ordinance are before us. The matter was ably presented here by the village attorney as well as by the attorney for plaintiff.

The circuit court evidently considered that the plaintiff's application for a temporary injunction should be denied, but that the restraining order should remain in effect pending appeal.

*By the Court.*—The order appealed from is modified so as to vacate the restraining order and deny plaintiff's application for temporary injunction. As so modified, it is affirmed.