FOLSOM INVESTMENTS, INC., a
Texas corporation, Plaintiffs,

v.

CITY OF SCOTTSDALE, a municipal
corporation of the State of Arizona;
Herbert R. Drinkwater; Jean L. Black,
James Bruner, Diane D. Cusack, Billie
Axline Gentry, Bill Walton, and Rene
Wendell, in their official capacities as
duly elected members of the City Coun-
cil of Scottsdale, Arizona, Defendants.

No. Civ–85–1078 PHX. WPC.

United States District Court,
D. Arizona.

Oct. 29, 1985.

Neil Vincent Wake, Phoenix, Ariz., and Joseph W. Geary, Dallas, Tex., for plaintiffs.

William E. Farrell, Scottsdale City Atty., Scottsdale, Ariz., for defendants.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

### I. FACTS

The following facts are undisputed and are set forth in the Stipulation of Facts.

On December 30, 1983, Folsom Investments purchased a tract of land located within the corporate limits of the City of Scottsdale. At the date of purchase, the land was zoned R1–43 which allows construction of one single-family home per lot of 43,000 square feet.

On November 1, 1983, the Scottsdale City Council directed the City Planning Staff to begin analysis of planning and zoning for property that included Folsom's.

On September 27, 1984, Folsom submitted a preliminary plat application to the City of Scottsdale. The application satisfied all existing zoning and legal requirements, with the exception of drainage problems. Any potential drainage concerns with the preliminary plat would not have delayed the preliminary or final plat approval. By letter dated October 26, 1984, plaintiff was notified that the Project Review Director for the City of Scottsdale recommended denial of the preliminary plat application pursuant to Section 12–220(b)(2) of the Scottsdale City Code, which provides for denial based upon "existing and proposed zoning and land use of the tract and its environs." Plaintiff appealed to the Scottsdale Zoning and Planning Commission and the Scottsdale City Council. The Scottsdale Planning Commission denied the appeal on November 13, 1984 and the Scottsdale City Council on November 20, 1984 based upon the recommendation of the Project Review Director that the plat did not conform with proposed zoning.

On December 17, 1984, the Scottsdale City Council adopted Resolution 2518, amending the Scottsdale General Plan for the relevant area. The amendment recommended a less dense zoning for the area. On March 15, 1985, the Scottsdale City Council adopted Ordinance No. 1699, which decreased the density of residential development from one single-family home per 43,000 square feet to one single-family home per 70,000 square feet.

If plaintiff's preliminary plat application had been approved when initially applied for, plaintiff would have begun construction on the property within eight to twelve weeks of November 20, 1984 (January 16 or February 13 of 1985).

Plaintiff and defendants have both filed motions for partial summary judgment. Plaintiff's motion for partial summary judgment is addressed only to the Arizona zoning/subdivision regulation law theories and due process theories of relief and requests a declaratory judgment and permanent injunction. Plaintiff does not address the equal protection theories of relief and the amount of damages that may be owing. Defendants are asking for partial summary judgment on the due process and equal protection theories of relief.

### II. DISCUSSION

*A. Plaintiff's Motion for Partial Summary Judgment Predicated upon Arizo-*

*na Zoning and Subdivision Regulation Law*

The City's denial of plaintiff's plat application on November 20, 1985, was based upon the Scottsdale City Code § 12–220(b)(2), which provides in pertinent part:

> B. The Department shall distribute copies of the plat to the following reviewing offices:
>
> \*   \*   \*   \*   \*   \*
>
> 2. Plan Director for compliance to public objectives, giving special attention to design principles and standards as set forth in Chapter 3 of this title; street and thoroughfares as related to the City streets and highway plans and to neighborhood circulation; utility methods and systems; *existing and proposed zoning and land use of the tract and its environs;* and, land required for schools, parks and other public facilities.

*Id.* (emphasis added).

The preliminary plat application was denied because the Project Review Director determined that the plat did not conform with proposed zoning. Statement of Stipulated Facts at ¶ 5.

Plaintiff argues that it was entitled to approval of its preliminary plat application as a matter of Arizona zoning and subdivision regulation law. Plaintiff argues that Section 12–220(b)(2) exceeds the authority delegated to the City by the State and conflicts with controlling state statutes. The regulation is therefore argued to be void.

■ The municipal power to zone land and to regulate the subdivision of land exists by virtue of state enabling legislation. *City of Scottsdale v. Superior Court in and for Maricopa County,* 103 Ariz. 204, 439 P.2d 290, 293 (1968). The state enabling act for municipal subdivision regulations is Ariz.Rev.Stat.Ann. § 9–463 *et seq.* Municipal subdivision regulation must be authorized by Section 9–463 *et seq.* to be valid. *Bella Vista Ranches, Inc. v. City of Sierra Vista,* 126 Ariz. 142, 613 P.2d 302, 303 (Ct.App.1980). Section 9–463.01 provides the relevant enabling municipal authority provisions:

> A. Pursuant to the provisions of this article, the legislative body of every municipality shall regulate the subdivision of all lands within its corporate limits.
>
> B. The legislative body of a municipality shall exercise the authority granted in subsection A by ordinance prescribing:
>
> \*   \*   \*   \*   \*   \*
>
> 2. Standard governing the design of subdivision plats.
>
> 3. Minimum requirements and standards for the installation of subdivision streets, sewer and water utilities and improvements as a condition of final plat approval.
>
> C. By ordinance, the legislative body of any municipality shall:
>
> \*   \*   \*   \*   \*   \*
>
> 3. Make requirements as to form and content of preliminary plats.
>
> 4. Determine that certain lands may either not be subdivided, by reason of adverse topography, periodic inundation, adverse soils, subsidence of the earth's surface, high water table, lack of water or other natural or man-made hazard to life or property, or control the lot size, establish special grading and drainage requirements, and *impose other regulations deemed reasonable and necessary for the public health, safety or general welfare on any lands to be subdivided affected by such characteristics.*
>
> \*   \*   \*   \*   \*   \*

*Id.* (emphasis added).

There appears to be no specific grant of authority allowing denial of subdivision based upon proposed zoning.

■ Defendants argue that Ariz.Rev. Stat.Ann. § 9–463.01(C)(4) gives municipalities the right to impose such regulations as are deemed reasonable and necessary for the public health, safety or general welfare. Defendants' Response at 2. Defendants neglect to read the whole of section 9–463.01(C)(4); it is clear that the grant of

authority to impose such reasonable and necessary regulations is limited to the certain lands that may not be subdivided due to certain explicitly enunciated characteristics (that is, by reason of adverse topography, periodic inundation, etc.). Plaintiff's land does not fall under Ariz.Rev.Stat.Ann. § 9–463.01(C)(4).

■ Defendants' next argument has merit. Defendants argue that 9–463.01 constitutes a broad grant of power to the cities. Defendants' Response at 2. The courts are to interfere only when the ordinance enacted pursuant to the grant is arbitrary and unreasonable. *City of Tucson v. Arizona Mortuary,* 37 Ariz. 495, 272 P. 923 (1928). *See also Cardon Oil Co. v. City of Phoenix,* 122 Ariz. 102, 593 P.2d 656 (1979) (the principal constitutional test applied to zoning decisions is whether a zoning ordinance bears any substantial relationship to public health, safety, morals or general welfare). Defendants argue that the Scottsdale ordinance is not arbitrary or unreasonable. If the only legislative provisions to be considered were Sections 9–463 *et seq.* and the Scottsdale City Code provision, defendants' argument would be dispositive.

■ There are other enabling statutes to be considered. Ariz.Rev.Stat.Ann. § 9–462 *et seq.* applies to municipal zoning. If a municipality decides to regulate land use, it must comply with Ariz.Rev.Stat.Ann. § 9–462.04 which requires certain procedures such as a hearing before the planning commission, notice of hearing by publication or posting 15 days before the hearing, etc. Ariz.Rev.Stat.Ann. § 9–462.03 is of special interest to the instant case:

> A zoning ordinance which changes any property from one zone to another, imposes any regulation not previously imposed or which removes or modifies any such regulation previously imposed shall be adopted in the manner set forth in § 9–462.04.

*Id.*

In reality, Scottsdale imposed new zoning restrictions on plaintiff's land when it de-

nied the plat application for the sole reason that the plat did not conform with proposed zoning. Scottsdale effectively changed the property from one zone to another without following the requirements of Section 9–462.04. Assuming that defendants had the broad grant of power argued for, that grant of power does not include the power to overrule specific statutory enabling zoning provisions such as Ariz.Rev.Stat.Ann. §§ 9–462.03 and 9–462.04. That portion of Scottsdale City Code § 12–220(b)(2) which allows the denial of subdivision plats solely upon "proposed" zoning conflicts with the controlling state statute on amendments of zoning and is therefore void. *See City of Scottsdale v. Scottsdale Associated Merchants, Inc.,* 120 Ariz. 4, 583 P.2d 891 (1978) (ordinance of charter city concerning nonconforming signs conflicted with controlling state statute and was therefore void).

Defendants argue that plaintiff has no vested rights entitled to protection. They rely upon *City of Tucson v. Arizona Mortuary,* 37 Ariz. 511, 293 P. 923 (1928), arguing that like the defendant in *Arizona Mortuary,* Folsom had knowledge of the pending change in the ordinance before any material amount of construction had actually been done. *Id.* at 928–29. Folsom's situation is distinguishable from *Arizona Mortuary,* as the *Arizona Mortuary* court recognized:

> If plaintiff's business had been an established, long-continuing one, acquiesced in with full knowledge of the facts by the city authorities, *or if mortuaries had been permitted at the location in question on May 12th [the date of purchase of the land] by express ordinance,* and not merely because the city had not as yet found if necessary to act at all on the subject, the situation would have been very different, and an estoppel might be entitled to consideration.

*Id.* at 928.

In the instant case, single-family homes per lot of 43,000 square feet were permitted by express ordinance at the date Folsom purchased the land. The instant situation is

different, as pointed out by the *Arizona Mortuary* court.

■ The mere filing of a plat does not vest rights to develop property in a certain zoning category. *Dawe v. City of Scottsdale*, 119 Ariz. 486, 581 P.2d 1136 (1978). Where the amount of work done toward construction is of small consequence, the holder of a building permit has acquired no vested right to complete the construction if the property is rezoned and the permit revoked. *Verner v. Redman*, 77 Ariz. 310, 271 P.2d 468 (1954) (cited in *Dawe*, 581 P.2d at 1138). To have a vested right to develop property in accordance with the prior zoning, a permit must have been legitimately issued, and the permittee must have incurred substantial expenses in reliance on the permit. *Town of Paradise Valley v. Gulf Leisure Corp.*, 27 Ariz.App. 600, 557 P.2d 532 (1976). No actual physical construction need be commenced but substantial money expenditures, considerable contractual commitments,and extensive preparation is necessary to vest a protectible interest. *Id.* at 540.

If Folsom's preliminary plat application had been approved when it was wrongfully rejected, "Folsom would then have applied for and obtained Final Plat approval and would have applied for and obtained all necessary permits within eight to twelve weeks of November 20, 1984, and Folsom would have begun construction at that time." Statement of Stipulated Facts at ¶ 8. With a project of this scope and size, *see* Attatchment # 3 of Statement of Stipulated Facts, substantial monetary expenditure, considerable contractual commitments, and extensive preparations would have given rise to vested rights before the March 5, 1985 zoning change.

■ "Where a building permit ... is issued by a county or a city and the permitee acts upon it and incurs obligations, or in good faith commences construction, his rights become vested and the governmental body is thereafter estopped to set up a zoning ordinance subsequently enacted." *Phoenix City Council v. Canyon Ford, Inc.*, 12 Ariz.App. 595, 473 P.2d 797, 802 (1970) (quoting from *Anderson v. City Council of City of Pleasant Hill*, 229 Cal. App.2d 79, 40 Cal.Rptr. 41 (1964)). In the instant case, but for the wrongful act of denial of the preliminary plat application, plaintiff would have been issued a permit, would have incurred obligations upon it, and would have commenced construction before the zoning change. The City of Scottsdale is thereby estopped from denying plaintiff use of its property in accordance with the R1–43 zoning in effect prior to March 5, 1985.

Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion for Partial Summary Judgment based upon Arizona zoning and subdivision regulation law is GRANTED.

2. Plaintiff is ordered to submit a drainage report and grading plan if requested by the City of Scottsdale.

3. Defendants are ordered to approve plaintiff's preliminary plat application and any later final plat, building permits and other permits required by plaintiff which are in conformity with the preliminary plat. To the extent otherwise proper under the law in effect on November 20, 1985, the City of Scottsdale may require adjustments to the Final Plat to accommodate any legitimate drainage concerns.

4. Plaintiff may develop the property herein in accordance with the R1–43 zoning in effect prior to the March 5, 1985 downzoning.

5. Defendants are to make all appropriate changes in the zoning map to reflect plaintiff's property as adjudicated herein.

6. Defendants are not to enforce Scottsdale Ordinance No. 1699 as against plaintiff's property involved herein.

7. Plaintiff is awarded reasonable fees and other expenses pursuant to Ariz.Rev. Stat.Ann. § 12–2030.

8. Further proceedings will be allowed to determine any damages for temporary interruption of plaintiff's lawful use of its property.